IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | MDL Docket No. 4:03CV1507-WRW |
| | : | 4:05CV00497 |
| PREMPRO PRODUCTS LIABILITY | : | |
| LITIGATION | : | |
| | : | |
| | : | |
| HELENE RUSH | : | PLAINTIFF |
| | : | |
| v. | : | |
| | : | |
| WYETH | : | DEFENDANT |

### ORDER

Pending is Defendant's Motion to Strike Expert Testimony Re: Legal Conclusions of Drs. Gueriguian and Sackett[1] (a trenchant memorandum, I note with pleasure). Plaintiff has responded.[2]

Down through the years common law courts have struggled with "opinion" v. "fact" and "legal conclusions."[3] As a practicing lawyer I wrestled with these questions often (as an example, see *Patterson v. State*[4]).

The following questions (posed to two of Plaintiff's experts) and answers have drawn vigorous objections from Defendant's counsel:

Plaintiff's Counsel to Dr. Gueriguian:

> Q. Dr. Gueriguian, let me define some terms for you. I want you to assume at the end of this trial Judge Wilson will define the term "negligence" as follows: Negligence means failure to do something

---

[1]Doc. No. 576.

[2]Doc. No. 580.

[3]1 MCCORMICK ON EVIDENCE §§ 11-12 (Kenneth S. Broun, et al. eds. 6th ed. 2006).

[4]591 S.W.2d 356 (Ark. 1979).

1

>   which a reasonably careful drug manufacturer would do or the doing of something which a reasonably careful drug manufacturer would not do under circumstances similar to those shown by the evidence in this case. Have you understood that definition as I have read it?
>
> A. I understand that.
>
> Q. Dr. Gueriguian, based on the thousands of documents that you reviewed in this case, the testimony that you reviewed in this case and based on your 30-plus years of training, education and experience as it relates to the drug industry, first, do you have an opinion based on that definition as I have read it? Do you have an opinion about whether Wyeth was negligent in this case?
>
> A. I do have an opinion.
>
> Q. And what is your opinion?
>
> A. That it was negligent.
>
> Q. Let me read another definition to you. Assume with me, please, at the end of this case that Judge Wilson also defines negligence to read that a drug manufacturer has a duty to use ordinary care in its drug's design in order to protect those who will use the drug from unreasonable risk of harm while the drugs are being used for their intended purpose or any purpose which should reasonably be expected by the drug manufacturer. This duty to use ordinary care in design may include a duty to test or otherwise to discover risks which should influence the design of these drugs. Have you understood that definition as I have read it to you?
>
> A. Yes.
>
> Q. Again, based on the thousands of pages of documentation that you have reviewed, based on the testimony that you have seen in this case and based on your 30-plus years of experience in this industry, first, do you have an opinion as to whether Wyeth's conduct was negligent as I have just defined it?
>
> A. I do.
>
> Q. And what is your opinion?
>
> A. That it didn't use ordinary care as applied in this definition.

Q. And, therefore, was Wyeth negligent based on that definition?

A. In my opinion, yes.[5]

Plaintiff's Counsel to Dr. Sackett:

Q. Doctor, as part of your expert work on this case, have you reviewed a lot of trials that were conducted over the years on E, estrogen, and E plus P, estrogen and progestin?

A. Yes.

Q. Have you reviewed a number of Wyeth's internal documents as part of your expert review on this case?

A. Yes.

Q. Have you formulated opinions about Wyeth's conduct -- that is, Wyeth's actions or inactions -- with regard to testing its drugs in this case?

A. Yes.

Q. Doctor, I am going to ask you to assume at the end of this case that the judge will give instructions and definitions to the jury, and I am going to ask you to assume that the judge will instruct the jury: When I use the word "negligence" in these instructions, I mean the failure to do something which a reasonably careful drug manufacturer would do or the doing of something which a reasonably careful drug manufacturer would not do under circumstances similar to those shown by the evidence in this case. In determining whether Wyeth was negligent, you may consider the degree of skill and care ordinarily possessed and used by drug manufacturers doing work of a nature similar to that shown by the evidence in this case. A drug manufacturer is held to the skill of an expert in his business and must keep reasonably abreast of scientific knowledge and discoveries touching its product. A drug manufacturer has a duty to use ordinary care in designing its drugs in order to protect those who will use the drugs from unreasonable risk of harm while the drugs are being used for their intended purpose or for any purpose which should reasonably be expected by the drug manufacturer. This duty to use ordinary care in design may include a duty to test or otherwise discover risks which should influence the design of the drugs. Assuming that definition to be true, whether you know it to be true

---

[5]Trial Tr. Vol. 8, 1565-67, January 31, 2007.

> or not, do you have an opinion as to whether or not under that definition Wyeth was negligent in this case?
>
> ***
>
> Q. Can you answer the question, Doctor? The question was, do you have an opinion under that definition?
>
> A. Yes.
>
> Q. What is your opinion?
>
> A. It would be my opinion that Wyeth is negligent.
>
> Q. Why?
>
> A. Because they didn't in a timely and comprehensive way determine the relative benefits and risks of these drugs, estrogen, estrogen plus progesterone, in terms of cardiovascular risks and harm.[6]

I suspect my first reaction (to prohibit the "ultimate issue" question) would be common for those of us who were called to the Bar before the adoption of the Federal Rules of Evidence and the Uniform Rules of Evidence.[7] After research and reflection, however, I believe these questions were permissible in the context of this complex, highly technical case.

Questions calling for answers expressing an opinion as to a party's negligence (or lack of negligence) have often been condemned.[8] At the same time, some authorities permit them. McCormick points out that:

---

[6] Trial Tr. Vol. 9, 1740-43, February 5, 2007.

[7] *See* Trial T. Vol. 8, 1547-50, January 31, 2007.

[8] *See* 1 MCCORMICK ON EVIDENCE § 12, n.28 (citing *Shahid v. City of Detroit*, 889 F.2d 1543 (6th Cir.1989) (trial court properly excluded expert opinion that certain behavior by defendant officers amounts to negligence under law); *see also*, *Roman v. Vargas, 1 Dept.*, 582 N.Y.S.2d 1020 (holding that no expert is permitted to testify that party was negligent; determination of that issue is exclusive function of trier of fact); *Andrews v. Metro N.C.R. Co.*, 882 F.2d 705, 709 (2d Cir. 1989) (finding error in permitting an expert to "testif[y] bluntly that 'the railroad was negligent'").

4

   In some jurisdictions such as Texas, it is becoming customary to read the pertinent jury instruction aloud to the expert before eliciting the experts's opinion applying the legal standard set out in the instruction.[9]

  In *Andrews v. Metro North Commuter R.R. Co.*,[10] the Second Circuit Court of Appeals held that the district court abused its discretion when it permitted an expert to testify that the defendant negligently operated the train.  The court determined that "[b]ecause the expert did not state the legal criteria for his opinion on negligence and there was no way of knowing whether his conclusion was based on a correct or erroneous legal standard."[11]  By contrast, the questions in this case included the definition of "negligence" and "proximate cause" that will be used in the final charge to the jury.

  In *U.S. v. Kelly*, the expert used the phrase "possess with intent to distribute" in his testimony.[12]  The Eighth Circuit Court of Appeals held that the "testimony [was] not defective because it utilized the words of the legal standard . . . [since] [t]here was no danger of confusing the jury."[13]  Of course "possess with intent to distribute" is one of the crucial elements of the crime which the jury must ultimately determine.  It seems to me that if such testimony is permissible in a criminal case, then, *a fortiori*,[14] it should be admitted in this type of civil case.

---

[9]1 MCCORMICK ON EVIDENCE § 12, n.30.

[10]882 F.2d 705 (2d Cir. 1989).

[11]*Fiataruolo v. U.S.*, 8 F.3d 930, 942 (2d Cir. 1993) (citing *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 708-09) (emphasis applied).

[12]*U.S. v. Kelly*, 679 F.2d 135, 136 (8th Cir. 1982).

[13]*Id.*

[14]With apologies to Mr. Garner.  *See* Bryan A. Garner, *The Elements of Legal Style* 193-95 (2002).

As noted, several cases have approved answers that include "negligence" or "malpractice."[15] In this case, Plaintiff's counsel questioned the experts, at great length, regarding their knowledge of the facts of the case, the pertinent exhibits, applicable regulations, and learned treatises. And counsel used the applicable jury instructions.[16]

I probably would have a different view if Plaintiff's counsel had chosen to call for the expert opinions "without first testifying to the underlying facts or data . . . ."[17] But, as stated above, counsel first questioned the experts at length regarding the facts and data underlining their opinions. And the questions were prefaced by the legal standards that will be included in the final charge to the jury. I think both of these points are important.

Some of the authorities object to an expert's expressing an opinion on the ultimate issue, "but they can still express such opinions on the penultimate questions before the jury."[18] The "appropriate" question suggested by Defendant in its brief are as follows:

> Q.   Did Wyeth appropriately warn/test about the risk of Premarin and Prempro?

---

[15] *See* 1 MCCORMICK ON EVIDENCE § 12, nn.28, 30, & 31 (citing *McClellan v. French*, 439 S.W.2d 813 (Ark.1969) (witness, in testifying a doctor was not guilty of malpractice, used the term in its connotation of "standard medical procedure in the community"); *Behlke v. Conwed Corp.*, 474 N.W.2d 351 (Minn. App. 1991) (holding that expert could address the ultimate issue of negligence); *Groce v. Fidelity General Insurance Co.*, 448 P.2d 554 (Or.1968) (no error in permitting witness to testify to "good faith" of insurer-possibly dictum); *Metot v. Danielson*, 780 S.W.2d 283, 288 (Tex. App.1989); *Hines v. Denver & Rio Grande Western R.*, 829 P.2d 419, 420 (Colo. App.1991) (the expert could "express an opinion that [defendants'] conduct in the operation of the train constituted negligence"); *Puente v. A.S.I. Signs*, 821 S.W.2d 400, 402 (Tex. App.1991) (holding that FRE 704 "permits an expert to testify to ultimate issues which are mixed questions of law and fact, such as whether particular conduct constitutes negligence.")).

[16] AMI Civil 2006, 302.

[17] FED. R. EVID. 705.

[18] 1 MCCORMICK ON EVIDENCE § 12 (emphasis added).

        A.      [No]

        Q.      What did Wyeth do?

        A.      [Factual description of Wyeth's conduct]

        Q.      What is the standard in the pharmaceutical industry for warning/testing about the risks of prescription drugs?

        A.      [Factual description of applicable standard of care]

        Q.      Did Wyeth meet that standard?

        A.      [No]

        Q.      Why not?

        A.      [Explain]

        Q.      On what facts and data, do you basis your opinion?

        A.      [Explain][19]

It seems to me that these "penultimate" questions dance around the edge, and are hardly less objectionable than the questions posed by Plaintiff's counsel.

      Defendant's Motion to Strike Expert Testimony Re: Legal Conclusions of Drs. Gueriguian and Sackett (Doc. No. 576) is DENIED (exceptions saved).

      IT IS SO ORDERED this 9th day of February, 2007.

                                                /s/ Wm. R.Wilson,Jr.
                                                UNITED STATES DISTRICT JUDGE

---

[19] Doc. No. 581.

7